**Case Nos. 22-1185, 22-1197, 22-1605**

---

# IN THE UNITED STATES
# COURT OF APPEALS FOR THE
# SIXTH CIRCUIT

---

LUKE WAID, et al.
Plaintiffs

CO-LIAISON COUNSEL FOR THE INDIVIDUAL PLAINTIFFS;
CO-LEAD COUNSEL FOR THE SETTLEMENT CLASS
Plaintiffs-Appellees

v.

RICHARD DALE SNYDER, et al.
Defendants

RAYMOND HALL; ROBERT HEMPEL; ASHLEY JANKOWIAK
Objectors-Appellants

---

Appeal from the United States District Court
Eastern District of Michigan, Southern Division
Honorable Judith E. Levy
No. 5:16-cv-10444

---

## BRIEF FOR CLASS PLAINTIFFS-APPELLEES

Emmy Levens
Theodore J. Leopold
COHEN MILSTEIN SELLERS & TOLL, PLLC
1100 New York Ave NW, Suite 500
Washington, DC 20005
(202) 408-4600
elevens@cohenmilstein.com
tleopold@cohenmilstein.com

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Fed. R. App. P. 26.1 and 6th Cir. R. 26.1, none of the Class Plaintiffs-Appellees is a subsidiary or affiliate of a publicly owned corporation, and Class Plaintiffs-Appellees and their counsel are aware of no publicly owned corporation that is not a party to this appeal and has a financial interest in the outcome.

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ........................................................ I

TABLE OF AUTHORITIES ................................................................ IV

STATEMENT IN SUPPORT OF ORAL ARGUMENT ......................................... X

STATEMENT OF JURISDICTION.................................................................. 1

STATEMENT OF ISSUES ........................................................................ 2

STATEMENT OF THE CASE....................................................................... 3

    I.    The Settlement........................................................................ 4
    II.   Plaintiffs' Motion for Attorneys' Fees and Expenses. ........................ 5
    III.   Objections to the Motion for Attorneys' Fees and Expenses. ............. 7
    IV.   District Court's Fees Opinion. ..................................................... 8

SUMMARY OF THE ARGUMENT ................................................................ 12

ARGUMENT ................................................................................... 14

    I.    The Standard of Review Confers Significant Deference to the District Court's Decision.................................................................. 14

    II.   The District Court Properly Analyzed Plaintiffs' Percentage-Based Request for Attorneys' Fees Under the *Ramey* Factors. .................... 16

    III.   Because Hall Does Not Challenge the Reasonableness of the Percentage-of-the-Fund Approach Their Discovery Arguments Can Be Dismissed as Moot....................................................... 19

        A.   Hall Cannot Show that the District Court Abused its Discretion in Choosing and Apply the Percentage-of-the-Fund Approach. .................................................................. 19

        B.   Hall's Waiver Renders Their Discovery Arguments Moot. ..... 20

    IV.   The District Court Properly Denied Objectors' Request for Discovery of Even More Detailed Billing and Cost Records Than Those Already Provided.................................................................... 21

        A.   The District Court Correctly Applied Rule 23(h) in Denying Hall's Requested Discovery................................................. 21

        B.   Hall Has Not Otherwise Demonstrated Their Right to the Additional Discovery Sought............................................... 26

1. Hall Lacks a Cognizable Due Process Right to Discovery in This Context. ....................................................................26
2. A Fee Award Cross-Check is Merely Optional in the Sixth Circuit and Hall Fails to Show That a Cross-Check is Specially Required Here. ....................................................29
3. Hall had Sufficient Information to Evaluate their Position. 33
4. The District Court's Decision is Fully Consistent with Sixth Circuit Precedent. ..............................................................36
5. Hall's Motion for Discovery Failed to Show a Need for Cost-Related Information as to Class Counsel. ...................40

V.    Hall's Challenge to the Tiered Common Benefit Award is Entirely Meritless. ..............................................................................41
A.    Hall Lacks Standing to Appeal the Common Benefit Award. .42
B.    The District Court Applied the Correct Legal Rule to Assess a Reasonable Common Benefit Assessment. .............................45

CONCLUSION .......................................................................................51

CERTIFICATE OF COMPLIANCE ....................................................53

CERTIFICATE OF SERVICE .............................................................54

ADDENDUM OF DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS .......................................................................................55

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Amalgamated Clothing & Textile Workers Union v. Wal-Mart Stores, Inc.*,
54 F.3d 69 (2d Cir. 1995) .................................................................47

*Arizonans for Off. Eng. v. Arizona*,
520 U.S. 43 (1997).........................................................................42

*Bickel v. Korean Air Lines Co*,
96 F.3d 151 (6th Cir. 1996) .............................................................20

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980)..................................................................16, 46

*Bowles v. Russell*,
551 U.S. 205 (2007)........................................................................43

*Bowling v. Pfizer, Inc.*,
102 F.3d 777 (6th Cir. 1996) ................................................15, 30, 31

*In re Cardizem CD Antitrust Litig.*,
218 F.R.D. 508 (E.D. Mich. 2003) ...............................................18, 40

*Cassese v. Williams*,
503 F. App'x 55 (2d Cir. 2012) .........................................................25

*Chambers v. Whirlpool Corp.*,
980 F.3d 645 (9th Cir. 2020) ...........................................................28

*Charron v. Wiener*,
731 F.3d 241 (2d Cir. 2013) ............................................................28

*Collier v. LoGiudice*,
818 F. App'x 506 (6th Cir. 2020) ......................................................15

*In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*,
248 F.R.D. 483 (E.D. Mich. 2008) ....................................................40

iv

*Devlin v. Scardelletti*,
536 U.S. 1 (2002) .................................................................................. 42

*In re Diet Drugs*,
582 F.3d 524 (3d Cir. 2009) .......................................... 38, 49, 50, 51

*In re Flint Water Cases*,
53 F.4th 176 (6th Cir. 2022) .................................................................. 3

*In re Flint Water Cases*,
960 F.3d 303 (6th Cir. 2020) .................................................................. 3

*In re Flint Water Cases*,
No. 21-1164, 2021 WL 5647777 (6th Cir. Dec. 1, 2021) ...................... 3

*Gascho v. Glob. Fitness Holdings, LLC*,
822 F.3d 269 (6th Cir. 2016) ......................................... 15, 21, 18, 30

*Goldberger v. Integrated Res., Inc.*,
209 F.3d 43 (2d Cir. 2000) .................................................................. 35

*Gonter v. Hunt Valve Co.*,
510 F.3d 610 (6th Cir. 2007) ....................................................... 14, 15

*Green v. Nevers*,
196 F.3d 627 (6th Cir. 1999) ............................................... 1, 20, 21

*Grupo Mexicano Desarollo S.A. v. All. Bond Fund, Inc.*,
527 U.S. 308 (1999) .............................................................................. 46

*In Re Hall*,
4 F.4th 376 (6th Cir. 2021) .................................................................... 3

*Hensley v. Eckerhart*,
461 U.S. 424 (1983) ........................................................... 18, 32, 34

*Hill v. State St. Corp.*,
794 F.3d 227 (1st Cir. 2015) ................................................................ 44

*Holbrook v. Pitt*,
748 F.2d 1168 (7th Cir. 1984) .............................................................. 46

*Huyer v. Van de Voorde*,
   847 F.3d 983 (8th Cir. 2017) ................................................................44

*Imwalle v. Reliance Med. Prods., Inc.*,
   515 F.3d 531 ........................................................................................34

*Johnson v. NPAS Sols., LLC*,
   975 F.3d 1244 (11th Cir. 2020) ...............................................23, 24, 33

*Kardules v. City of Columbus*,
   95 F.3d 1335 (6th Cir. 1996) ...............................................................45

*Keil v. Lopez*,
   862 F.3d 685 (8th Cir. 2017) ...................................................23, 24, 33

*Knisley v. Network Assocs., Inc.*,
   312 F.3d 1123 (9th Cir. 2002) .......................................................2, 44

*Lindy Bros. Builders, Inc. of Phila. v. Am. Radiator & Standard
   Sanitary Corp.*,
   487 F.2d 161 (3d Cir. 1973) .....................................................48, 49, 50

*Lindy Bros. Builders, Inc. of Philadelphia v. Am. Radiator &
   Standard Sanitary Corp.*,
   540 F.2d 102 (3d Cir. 1976) ..........................................................48, 49

*Linneman v. Vita-Mix Corp.*,
   970 F.3d 621 (6th Cir. 2020) ........................................................21, 30

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992).............................................................................42

*Madden v. Chattanooga City Wide Serv. Dep't*,
   549 F.3d 666 (6th Cir. 2008) ...............................................................19

*McCombs v. Meijer, Inc.*,
   395 F.3d 346 (6th Cir. 2005) ...............................................................41

*In re Mercury Interactive Corp. Secs. Litig.*,
   618 F.3d 988 (9th Cir. 2010) ...........................................23, 24, 33, 35

*Mills v. Elec. Auto-Lite Co.*,
   396 U.S. 375 (1970).............................................................................47

*Moulton v. U.S. Steel Corp.*,
  581 F.3d 344 (6th Cir. 2009) ..................................................14, 29, 31

*In re Nat'l Football League Players' Concussion Inj. Litig.*,
  814 F. App'x 678 (3d Cir. 2020) ........................................................38

*In re Nat'l Prescription Opiate Litig.*,
  956 F.3d 838 (6th Cir. 2020) ..............................................................46

*In re Packaged Ice Antitrust Litig.*,
  No. 17-2137, 2018 WL 4520931 (6th Cir. May 24, 2018) ...............45

*In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*,
  148 F.3d 283 (3d Cir. 1998) ...............................................................35

*Puckett v. Lexington-Fayette Urb. Cnty. Gov't*,
  833 F.3d 590 (6th Cir. 2016) ..............................................................20

*R. K. by & through J. K. v. Lee*,
  53 F.4th 995, 2022 WL 17076105 (6th Cir. 2022)............................21

*Ramey v. Cincinnati Enquirer, Inc.*,
  508 F.2d 1188 (6th Cir. 1974) .................................................*passim*

*Rawlings v. Prudential–Bache Props., Inc.*,
  9 F.3d 513 (6th Cir. 1993) ...........................................15, 16, 17, 32

*Redman v. RadioShack Corp.*,
  768 F.3d 622 (7th Cir. 2014) .......................................................23, 33

*In re Roundup Prods. Liab. Litig.*,
  544 F. Supp. 3d 950 (N.D. Cal. 2021), dismissed, No. 21-16228,
  2022 WL 16646693 (9th Cir. Nov. 3, 2022) ......................................46

*Shane Grp., Inc. v. Blue Cross Blue Shield of Michigan*,
  825 F.3d 299 (6th Cir. 2016) ...........................................36, 37, 38, 39

*Shane Grp., Inc. v. Blue Cross Blue Shield of Michigan*,
  No. 10-CV-14360, 2015 WL 1498888 (E.D. Mich. Mar. 31, 2015),
  *vacated and remanded*, 825 F.3d 299 (6th Cir. 2016)........................37

*Shimman v. Int'l Union of Operating Eng'rs, Loc. 18*,
  744 F.2d 1226 (6th Cir. 1984) ............................................................47

*Six (6) Mexican Workers v. Arizona Citrus Growers*,
904 F.2d 1301 (9th Cir. 1990) ............................................................32

*Swedish Hosp. Corp. v. Shalala*,
1 F.3d 1261 (D.C. Cir. 1993) ...............................................................32

*In re Syngenta AG MIR 162 Corn Litig.*,
No. 14-MD-2591-JWL, 2018 WL 6839380 (D. Kan. Dec. 31,
2018) .......................................................................................................50

*In re Thirteen Appeals Arising Out of San Juan Dupont Plaza Hotel
Fire Litig.*,
56 F.3d 295 (1st Cir. 1995) ...........................................................32, 33

*Utah v. Evans*,
536 U.S. 452 (2002) ..............................................................................42

*Van Horn v. Nationwide Prop. and Cas. Ins. Co.*,
436 F. App'x 496 (6th Cir. 2011) ...........................................17, 21, 30

*Yamada v. Nobel Biocare Holding AG*,
825 F.3d 536 (9th Cir. 2016) ..................................................26, 27, 28

**Statutes**

28 USC § 1291 ..............................................................................................1

28 USC § 1331 ..............................................................................................1

**Other Authorities**

Fed. R. App. P. 28(i) ....................................................................................3

Fed. R. Civ. P. 23 ...........................................................................11, 25, 36

Fed. R. Civ. P. 23(h) ..........................................................................*passim*

Fed. R. Civ. P. 23(h)(1) ..............................................................................22

Fed. R. Civ. P. 23(h)(2) ..................................................................21, 22, 24

Fed. R. Civ. P. 23(h)(3) ..............................................................................22

Fed. R. Civ. P. 23(h)(4) ..............................................................................22

Fed. R. Civ. P. 26(b)(2)..................................................................................25

Fed. R. Civ. P. 54(d)(2)..................................................................................22

Fed. R. Civ. P. 54(d)(2)(D) ............................................................................22

## STATEMENT IN SUPPORT OF ORAL ARGUMENT

Class Plaintiffs-Appellees ("Class Plaintiffs") do not believe oral argument is necessary for the Court to resolve these appeals, which present straightforward questions of law that can be resolved on the parties' briefs alone. While Class Plaintiffs therefore believe that oral argument would ultimately only serve to delay further resolution of these cases, we are prepared to present oral argument should the Court find it necessary to resolve these appeals.

## STATEMENT OF JURISDICTION

Jurisdiction in the District Court was based on 28 USC § 1331. Jurisdiction for this appeal is based on 28 USC § 1291.  The Hall Objectors (collectively "Hall") filed a timely notice of appeal on March 7, 2022.  Notice, RE 2130.  The Chapman Objectors filed a timely notice of appeal on March 10, 2022, Notice, RE 2136.  Appellant Roberts filed a timely notice of appeal on July 5, 2022, Notice, RE 2181, from an order issued on June 22, 2022, Order, RE 2180.

Class Plaintiffs challenge jurisdiction as to Hall on two discrete issues.  First, Hall challenges the District Court's denial of their request for discovery of exhaustive billing and costs records which relate to a lodestar method of fee calculation.  However, in awarding fees, the District Court employed a percentage-of-the-fund method to calculate fees and conducted a merely optional lodestar cross-check.  Further, in their opening brief, Hall fails to challenge the District Court's decision to apply a percentage-of-the-fund method (or its analysis thereunder), eliminating the prospect for further lodestar-related litigation as to this fee award.  Therefore, any subsequent lodestar-related discovery cannot "make a difference to the legal interests of the parties," and thus the issue of whether such discovery was properly denied is moot.  *See Green v. Nevers*, 196 F.3d 627, 632 (6th Cir. 1999).

Second, Hall challenges the District Court's acceptance of Common Benefit Assessments within Class Plaintiffs' request for fees.  However, reversal of the

1

District Court's approval of Common Benefit Assessments would not enhance the Hall's claims for recovery under the settlement.  Accordingly, Hall lacks standing on this issue, as any favorable ruling from this Court would not benefit them in any manner.  *See*, *e.g.*, *Knisley v. Network Assocs., Inc.*, 312 F.3d 1123, 1126 (9th Cir. 2002) (an objector lacks standing if modifying a fee award does not "actually benefit" him).

## STATEMENT OF ISSUES

1.    In granting Class Plaintiffs' attorney's fee request, the District Court applied a percentage-of-the-fund method to calculating fees instead of a lodestar. Hall fails to challenge the District Court's decision to apply a percentage-of-the-fund method on appeal.  Does that waiver render their request for lodestar-related discovery moot?

2.    The District Court denied Hall's motion for discovery of exhaustive billing and cost records, as (1) such records related to a lodestar method which the District Court applied as a merely optional cross-check to its percentage-of-the-fund analysis, (2) class billing and cost records were submitted along with the motion for fees, and (3) the District Court conducted its own *in camera* review of exhaustive class billing and costs records with the assistance of a Special Master.  Should this Court have jurisdiction on this issue, was the District Court's denial of discovery as to exhaustive billing records a proper exercise of its discretion?

3.      In granting Class Plaintiffs' attorney's fee request, the District Court accepted a Common Benefit Assessment as part of the fee award structure.  If vacating this aspect of the award does not enhance Hall's recovery under the settlement, does Hall have standing to challenge this provision?

4.      If this Court has jurisdiction, did the District Court abuse its discretion in accepting the Common Benefit Assessment?

## STATEMENT OF THE CASE

These appeals are the latest of many[1] in this litigation.[2]  Accordingly, Class Plaintiffs-Appellees ("Class Plaintiffs") will limit its recitation of the facts to only those relevant to the issues presented by these appeals.

This litigation is a consolidation of many lawsuits filed in the wake of the Flint Water Crisis.  Class cases and individual actions were consolidated under a single case number, with each proceeding on parallel tracks under the leadership of

---

[1] *See, e.g.*, *In re Flint Water Cases*, 960 F.3d 303 (6th Cir. 2020); *In Re Hall*, 4 F.4th 376 (6th Cir. 2021); *In re Flint Water Cases*, No. 21-1164, 2021 WL 5647777 (6th Cir. Dec. 1, 2021); *In re Flint Water Cases*, 53 F.4th 176 (6th Cir. 2022).

[2] The brief filed by the "Chapman Objectors" relating to Nos. 22-1197 and 22-1605, indicates that those objectors-appellants are not class-members and "do not attack any fees or costs awarded to Class Counsel."  Chapman Principal Br. at 4, No. 22-6105, ECF No. 16; Chapman Principal Br. at 4, No. 22-1197, ECF No. 17 (hereinafter "Chapman Br.").  Accordingly, this brief focuses on the appeal and brief filed by Hall, No. 22-1185.  Pursuant to Fed. R. App. P. 28(i), we join in the appellees' brief of Co-Liaison Counsel filed in response to those appeals.

court-appointed Class Counsel and Co-Liaison Counsel, respectively.  To ensure sufficient oversight over the many lawyers working on this complex litigation, the District Court entered a case management order requiring the submission of monthly time and expense reports and providing thorough standards and procedures for such reporting. Case Management Order, RE 507.  In particular, the Case Management Order outlined specific tasks that could be billed and discrete categories of costs.  *Id.* at 15829–42.  The District Court also appointed a Special Master, whose purpose, in part, in the years since has been to administer and review these monthly time and expense submissions from participating counsel.  Order Appointing Special Master, RE 524.

## I.      The Settlement.

Following multiple years of litigation, Plaintiffs reached a settlement in 2020 with the State of Michigan, the City of Flint, McLaren Hospital, and Rowe Professional Services Company providing relief to children, adults, and businesses harmed by the crisis.[3]  Under the leadership of Class and Co-Liaison Counsel, these defendants ultimately settled for a sum of $626.25 million to resolve both the proposed class cases, as well as tens of thousands of individually filed cases.  Am. Settlement Agreement, RE 1394-2.

---

[3] Litigation continues against two private engineering companies.

4

In accordance with the procedure for class settlements under Federal Rule of Civil Procure 23, the District Court granted preliminary approval of the settlement and approved notice to potential class members, including instructions regarding how to opt out of or object to the settlement. The District Court held a fairness hearing over several days, permitting parties to explain their support for the settlement's final approval or voice their reasons for objection. The Court finally approved the settlement in a lengthy opinion published on November 10, 2021, and deferred on ruling as to the fee issue. Final Approval Order, RE 2008. Although a handful of appeals of the final approval order were subsequently filed, all have since been dismissed such that the settlement is now final.

## II.    Plaintiffs' Motion for Attorneys' Fees and Expenses.

In addition to moving for approval of the settlement, Plaintiffs further moved for an award of attorneys' fees and expenses under the settlement. Pls.' Fee Mot., RE 1458. The Motion proposed a fee structure featuring a common benefit assessment and, for determining the fee amount, advocated for the District Court to employ the percentage-of-the-fund method regularly used in common fund cases, as opposed to a lodestar analysis more appropriate in a fee-shifting context, and analyzed the relevant factors. *Id.* at 57179–94. The Motion further included a request for reimbursement of reasonable expenses. *Id.* at 57194–97.

Importantly, Plaintiffs' proposed fee structure reflected the fact that a substantial majority of the settlement would be paid out to claims of non-class plaintiffs represented by individual counsel under contingent fee agreements that, as a general matter, do not fall within the District Court's purview. Pls.' Suppl. Mem. in Supp. of the Fee Mot., RE 1796, PageID # 64528. Because Class Counsel and Liaison Counsel (and the firms working under their direction) had performed substantial work for the class and individuals' benefit (*i.e.*, for common benefit), the Fee Motion argued for creation of a common-benefit fund of 6.33% of each claimant's recovery, for a total of approximately $40 million. The Motion further argued for limiting the amount of fees owed by individual plaintiffs "to ensure that no Plaintiff pays twice for the same work and results," Pls.' Fee Mot., RE 1458, PageID # 57176, and that the total fees owed by individual plaintiffs should be reduced from the 33.33% permitted under Michigan law, down to a cap (including the common-benefit assessment) of 31.6%, *id.* at 57182–83. In total, the Motion requested a fee rate up to 31.6% of the settlement fund, or $202.76 million. *Id.* at 57192.

In support of the Motion, each law firm attached affidavits identifying firm personnel who worked on the case, their title, both the current and historical rates at which they billed (over the course of several years), and the total number of hours billed per person. *See* Exs. to Fee Mot., RE 1458-1–1458-31. Also included were

the total number of hours billed by each firm, in one-tenth (0.1) hour increments, as allocated to eighteen discrete categories of tasks set out in the Case Management Order. *E.g.*, Ex. to Fee Mot., CMST Lodestar by Task, RE 1458-2, PageID # 57223. Firms provided information as to shared expenses and each firm's own costs, also according to specific categories outlined by the Case Management Order. *Id.* at 57213, 57224.

### III.    Objections to the Motion for Attorneys' Fees and Expenses.

A group of objectors represented by counsel from the Hamilton Lincoln Law Institute objected to the fee request and moved for discovery from the settling parties.  Hall Obj. to Fee Mot., RE 1548; Hall Mot. for Disc., RE 1586.  Relevant to their appeal as to Class Counsel's award, Hall specifically objected to the fee structure's common benefit assessment, which they characterize as a "special assessment," on the belief that it did not allocate fees proportionally amongst class members and unfairly punished class members who had not hired an attorney, thus violating fundamental principles of equitable fee awards.  Hall Obj. to Fee Mot., RE 1548, PageID ## 60226–28.  Hall also challenged the requested percentage of the fund as unreasonable and a windfall to the lawyers involved, arguing that class settlements with such large recoveries actually justify a smaller fee award.  *Id.* at 60231–35.

7

Hall further objected to the documentation filed as to fees, asserting that it was insufficient both for the Court to conduct a lodestar cross-check and for class members to "audit" the common benefit time, citing the early dispute between Class and Liaison Counsel as evidence of the need for such an audit. *Id.* at 60239–43. In conjunction with these objections, Hall filed a motion for discovery of, in part, exhaustive billing and cost records, citing both Rule 23(h) and due process considerations as evidence of a right to inspect records and verify occurrences of common benefit work and costs. Hall Mot. for Disc., RE 1586.

Hall also appeared at the final settlement hearing to register these arguments. *See* Fairness Hearing Transcript, RE 1906, Page ID ## 66934–37, 66945, 66949, 66960 (assessments); *id.* at 66947, 66973–75 (percentage requested too high); *id.* at 66937, 66943, 66949–60, 67004–23 (access to billing and costs records).

## IV.    District Court's Fees Opinion.

The District Court ultimately granted the Fee Motion in a ninety-nine (99) page opinion with minor modifications, noting that "Plaintiffs' Counsel achieved an extraordinary settlement in a case that has been intensely litigated for nearly six years," and that such fees were "well-earned" and "reflect their hard and persistent work." Fee Order, RE 2105, PageID # 72092. The District Court first found that expenses were justified, noting the Special Master's detailed review as well as its own, and Class Counsel's compliance with the specific parameters of the Time and

8

Expense Order. *Id.* at 72082–87. The District Court then found the proposed structure, including common benefit assessments, appropriate and, in calculating the fee, applied the requested percentage-of-the-fund approach with a lodestar cross-check using the factors outlined in *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188 (6th Cir. 1974).

In particular, the District Court found Plaintiffs' fees request justified under the first factor (value of the benefit rendered), highlighting the settlement as one of the largest in the State's history and benefitting over 50,000 individuals, property owners, and businesses in a city with a population less than 100,000. *See* Fee Order, RE 2105, PageID ## 72094–96 (characterizing settlement as "an unquestionably successful outcome" and "an extraordinary result"). The second factor (society's stake in rewarding attorneys who produce such benefits) also weighed in favor of the fees awarded, the District Court explaining that there is a significant interest in having attorneys prosecute complex, multi-year cases on behalf of an entire affected community. *Id.* at 72096–98.

Consistent with the third and fourth factors, the District Court next conducted a thorough analysis of specific percentages requested, *id.* at 72098–106, and used the lodestar method as a cross-check, detailing the exhaustive process for monthly time and expense submissions collected and closely scrutinized by the Special Master over the course of several years and reviewing the Special Master's

9

contemporaneously filed report, *id.* at 72106–17; *see* Special Master Report on Time and Expense Submissions, RE 2104; *see also* Fairness Hearing Transcript, RE 1906, PageID ## 66885–94 (Special Master report at Fairness Hearing).  The Special Master's work was exhaustive, receiving over 900 time and expense files from thirty-three (33) different firms, which included over 105,000 individual time entries and over 9,400 individual expense entries.  Special Master Report on Time and Expense Submissions, RE 2104, PageID # 72020; *see* Fee Order, RE 2105, PageID # 72114.  The Special Master further worked to resolve minor discrepancies and seemingly duplicative entries between her records and those attached to the Fee Motion, which she was able to reconcile upon further inquiry with particular law firms.  Special Master Report on Time and Expense Submissions, RE 2104, PageID ## 72023–27; Fairness Hearing Transcript, RE 1906, PageID # 66893.  The Special Master concluded her report with a list of findings, among which she noted that the vast majority of time entries and expense charges contained sufficient explanation to understand the task undertaken, all amounts for lodging and transportation were charged at appropriate rates, and charges for experts and consultants were not excessive. Special Master Report on Time and Expense Submissions, RE 2104, PageID ## 72028–32.  This accounting further supported the award as requested. Fee Order, RE 2105, PageID # 72116 ("The lodestar reflects the fact that counsel

10

has undertaken an enormous amount of work, which has resulted in a major accomplishment that is worthy of meaningful compensation.").

The District Court next found that consideration of the fifth factor (complexity of the litigation) justified granting the fee award as requested, as the litigation had been "demanding and challenging" and, in the absence of settlement, claims against these defendants likely "would be litigated for many more years to come." *Id.* at 72117–18. The sixth factor (skill and standing of counsel) also weighed strongly in Plaintiffs' favor, as the Court found Plaintiffs' Counsel to be careful, persevering, and diligent in navigating difficult legal terrain against capable opposing counsel. *Id.* at 72119.

Finally, the District Court overruled all of Hall's objections and denied their motion for discovery. *Id.* at 72125–33, 72139–42. As to reasonableness of the fees, the District Court rejected Hall's contention that the fee percentage sought was too high, finding "no evidence of a windfall in the award." *Id.* at 72128. As to their common benefit challenge, the District Court found that the fee structure did not create "incentives or disincentives for hiring counsel," instead serving to "fairly compensate[] the lawyers and create[] equity among Claimants." *Id.* at 72129. The District Court further found no violation of Rule 23 as to the fee and costs declarations attached to the motion, noting that such declarations were timely filed and provided all data and explanation required under the District Court's Time and

Expense Order.  *Id.* at 72133.  In denying their motion for discovery, the District Court noted that Hall failed to identify any authority supporting their argument for a right to inspect detailed cost and fee information, which had already been reviewed *in camera*.  *Id.* at 72140.  Most importantly, such discovery related only to the court's lodestar cross-check, which was merely optional, thus negating the need for exhaustive review.  *Id.* at 72140–41 (citing *In re Cardinal Health Inc. Sec. Litigs.*, 528 F. Supp. 2d 752, 767 (S.D. Ohio 2007)).

Hall filed a notice of appeal of the Fee Opinion on March 7, 2022. Notice, RE 2130. Hall's appeal has been consolidated with the appeals of other objector groups, led by Chapman and Roberts. Nos. 22-1197, 22-1605.

## SUMMARY OF THE ARGUMENT

The District Court's fee award properly reflects counsel's work over many years of hard-fought litigation that carried with it no guarantee of recovery for the class.

In deciding a fee, a trial court is afforded substantial deference, as fees are essentially a factual matter.  Here, the District Court was particularly well-situated, having been a close observer of counsel's work over many years.

The District Court properly exercised its discretion in choosing a percentage-of-the-fund method to calculate fees.  Because they do not challenge the District Court's decision to employ a percentage-of-the-fund method (or its analysis of the

12

relevant factors, for that matter) instead of a lodestar method, and the District Court's lodestar cross-check was merely optional, Hall has waived further litigation of the lodestar for this award.  Hall's challenge to the District Court's denial of lodestar-related discovery is thus moot and this Court should dismiss their appeal on this issue accordingly.

In the event this Court reaches the issue, it should affirm the District Court's order denying discovery of exhaustive billing records.  The District Court did not misapply Rule 23(h), which does not confer a right to audit exhaustive billing records, particularly where the District Court employed a percentage-of-the-fund method and conducted a merely optional lodestar cross-check.  Hall's out-of-circuit case law cited in support of its Rule 23(h) interpretation does not hold that objectors possess a substantive right to discovery, but rather that objectors must have adequate *time* to review the motion.  Nor has Hall otherwise identified a cognizable right to discovery of exhaustive billing records.  Regardless, Hall had sufficient information to object to Class Plaintiffs' motion for fees and costs, particularly as relates to an optional cross-check, which demands less detail.  Further, the District Court's lodestar cross-check went above and beyond to safeguard class member interests, reviewing many years' worth of detailed records, collected and audited monthly by the Special Master.

13

As to their assertion that the settlement's provision for Common Benefit Assessments (or "CBAs"), Hall lacks standing to make such a challenge because a favorable ruling would not enhance their recovery under the settlement. This Court should dismiss their appeal as to this issue accordingly. In the event this Court reaches the issue, it should affirm the District Court's acceptance of the provision, which it properly found to be reasonable under the circumstances. Further, authorities cited by Hall simply do not support their assertion of a categorical prohibition on the structure of this fee award.

## ARGUMENT[4]

### I.   The Standard of Review Confers Significant Deference to the District Court's Decision.

A district court's award of attorney's fees and expenses is reviewed for abuse of discretion. *Gonter v. Hunt Valve Co.*, 510 F.3d 610, 616 (6th Cir. 2007) (citing *Geier v. Sundquist*, 372 F.3d 784, 789 (6th Cir. 2004)). Reviewing courts in the Sixth Circuit "give great deference to district courts when reviewing an attorney's fee award." *Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 352 (6th Cir. 2009) (citing *Paschal v. Flagstar Bank*, 297 F.3d 431, 433–34 (6th Cir. 2002)). "Such deference 'is appropriate in view of the district court's superior understanding of the litigation

---

[4] The Chapman Objectors focus only on issues related to Liaison Counsel. Chapman Br. at 3–4 ("[T]hese Appellants are not members of the Class and do not attack any fees or costs awarded to Class Counsel."). Accordingly, this brief only addresses the arguments raised by Hall.

14

and the desirability of avoiding frequent appellate review of what essentially are factual matters.'" *Gascho v. Glob. Fitness Holdings, LLC*, 822 F.3d 269, 279 (6th Cir. 2016) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 432 (1983)). A reviewing court will only find an abuse of discretion "when the district court applies the wrong legal standard, misapplies the correct legal standard, or relies on clearly erroneous findings of fact." *Gonter*, 510 F.3d at 616 (quoting *First Tech. Safety Sys., Inc. v. Depinet*, 11 F.3d 641, 647 (6th Cir. 1993)) (internal quotations omitted). In common-fund cases, a district court's fees award need only "be reasonable under the circumstances." *Rawlings v. Prudential–Bache Props., Inc.*, 9 F.3d 513, 516 (6th Cir. 1993) (citing *Smillie v. Park Chem. Co.*, 710 F.2d 271, 275 (6th Cir. 1983)).

The Sixth Circuit likewise reviews decisions on discovery issues for abuse of discretion, which it has "defined as a definite and firm conviction that the trial court committed a clear error of judgment." *See Bowling v. Pfizer, Inc.*, 102 F.3d 777, 780 (6th Cir. 1996) (quoting *Logan v. Dayton Hudson Corp.*, 865 F.2d 789, 790 (6th Cir. 1989)) (internal quotations omitted). "Substantial deference is given to the district court's decision to limit discovery and we will not reverse it unless there is 'a clear showing that the denial of discovery resulted in actual and substantial prejudice to the complaining litigant.'" *Collier v. LoGiudice*, 818 F. App'x 506, 512 (6th Cir. 2020) (quoting *Pittman v Experian Info. Sols., Inc.*, 901 F.3d 619, 642 (6th Cir. 2018)).

15

## II.    The District Court Properly Analyzed Plaintiffs' Percentage-Based Request for Attorneys' Fees Under the *Ramey* Factors.

Neither of the Appellants take issue with the District Court's application of the *Ramey* factors in determining the appropriate award of attorneys' fees and expenses in this case.  But the central question in this appeal—whether the District Court abused its discretion in awarding attorneys' fees and expenses—turns entirely on whether the District Court correctly applied this precedent.  As demonstrated herein, the District Court did.

"When awarding attorney's fees in a class action, a court must make sure that counsel is fairly compensated for the amount of work done as well as for the results achieved."  *Rawlings*, 9 F.3d at 516 (citing *Lindy Bros. Builders, Inc. of Phila. v. Am. Radiator & Standard Sanitary Corp.*, 487 F.2d 161, 166–68 (3d Cir. 1973)). The Supreme Court has long recognized that "a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole."  *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) (collecting cases).

In the Sixth Circuit, fee awards in common fund cases (such as this one), need only be reasonable under the circumstances.  In calculating such a fee award, the district court may apply either the lodestar method, which focuses on the amount of work done, or percentage-of-the-fund method, which "more accurately reflects the results achieved."  *Rawlings*, 9 F.3d at 516.  The district court has discretion to

16

"select the more appropriate method for calculating attorney's fees in light of the unique characteristics of class actions in general, and of the unique circumstances of the actual cases before them." *Id.* To permit effective review of a fee award, "the district court must provide a clear statement of the reasoning used in adopting a particular methodology and the factors considered in arriving at the fee." *Id.* (citing *Hensley*, 461 U.S. at 437). The Court may also use the alternative method as a cross-check on the chosen method, however such a cross-check is not required, but merely optional. *Van Horn v. Nationwide Prop. and Cas. Ins. Co.*, 436 F. App'x 496, 501 (6th Cir. 2011).

Here, the District Court thoroughly analyzed each factor outlined by the Sixth Circuit in *Ramey*, 508 F.2d at 1196, in accordance with Plaintiffs' request for application of a percentage-of-the-fund approach and explained its reasoning for applying that approach as the primary method of calculation and using the lodestar only as a cross-check, *see* Fee Order, RE 2105, PageID # 72120.[5] The six *Ramey* factors are:

> 1) the value of the benefit rendered to the corporation or its stockholders, 2) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others, 3) whether the services were undertaken on a contingent fee basis, 4) the value of the

---

[5] Specifically, under the lodestar method the Court "would have been unable to fairly apportion awards in the manner that the Court believes accounts for the roles and efforts of PLG, Class Counsel, and IRC." Fee Order, RE 2105, PageID # 72120.

services on an hourly basis, 5) the complexity of the litigation, and 6) the professional skill and standing of counsel involved on both sides.

*Ramey*, 508 F.2d at 1196 (collecting cases).

The District Court was justified in reaching these conclusions. Employing a percentage-of-the-fund approach is "consistent with the majority trend" in the Sixth Circuit. *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 532 (E.D. Mich. 2003).[6] A trial court need only "articulate the 'reasons for adopting a particular methodology,'" *Gascho*, 822 F.3d at 280 (quoting *Moulton*, 581 F.3d at 352) (internal quotations omitted), which the District Court did, *see* Fee Order, RE 2105, PageID # 72120. In the context of fee awards, the Supreme Court has emphasized that, "the most critical factor is the degree of success obtained." *Hensley*, 461 U.S. at 436. Here, Plaintiffs' Counsel secured a historic amount on behalf of over 50,000 claimants. Society unquestionably has an interest in incentivizing counsel to prosecute complex[7] mass tort cases like this one. *Cardizem*, 218 F.R.D. at 534

---

[6] A percentage-of-the-fund approach is not unusual in these circumstances: "many courts utilize a percentage approach, which approximates the manner in which plaintiff contingent fee lawyers undertake work outside the class action context." Newberg & Rubenstein on Class Actions § 15:62 (6th ed. 2022); *see* Manual for Complex Litig. § 14.121 (4th ed. 2004) ("[T]he vast majority of courts of appeals now permit or direct district courts to use the percentage-fee method in common-fund cases.").

[7] Mass tort litigation is inherently complex. *See generally* Annotated Manual for Complex Litig. § 22.1 (4th ed. 2022). This case is no exception. Fee Order, RE 2105, PageID # 72117 (citing *Cardinal Health*, 528 F. Supp. 2d at 768) ("Class

("Encouraging qualified counsel to bring inherently difficult and risky but beneficial class actions like this case benefits society."). And the high quality of counsel on all sides of this litigation was evident throughout.

### III. Because Hall Does Not Challenge the Reasonableness of the Percentage-of-the-Fund Approach Their Discovery Arguments Can Be Dismissed as Moot.

#### A. Hall Cannot Show that the District Court Abused its Discretion in Choosing and Apply the Percentage-of-the-Fund Approach.

Hall does not assert on appeal that the District Court abused its discretion in choosing the percentage-of-the-fund method (or its analysis of the *Ramey* factors, for that matter). Instead, Hall only challenges (1) the District Court's denial of their request for discovery regarding detailed billing and cost records under Rule 23(h) for purposes of a lodestar cross-check, and (2) the District Court's award of additional, tiered common benefit assessments ("CBAs") reflecting the varying benefit conferred on claimants who did not retain counsel or retained counsel after a certain date. *See* Hall Br. at 2–3, ECF No. 17.

By failing to raise it in their brief, Hall waives any challenge of the District Court's decision to calculate fees with a percentage-of-the-fund approach and the issue moving forward in this litigation is thus resolved. *See Madden v. Chattanooga*

---

actions are, in general, 'inherently complex,' . . . and this hybrid class and non-class litigation is no exception.").

19

*City Wide Serv. Dep't*, 549 F.3d 666, 673 (6th Cir. 2008) (quoting *Marks v. Newcourt Credit Grp., Inc.*, 342 F.3d 444, 462 (6th Cir. 2003)) ("Under the general rule, '[a]n appellant waives an issue when he fails to present it in his initial briefs before this court.'") (alteration in original); *Puckett v. Lexington-Fayette Urb. Cnty. Gov't*, 833 F.3d 590, 611 (6th Cir. 2016) (quoting *Bolden v. City of Euclid*, 595 F. App'x 464, 468 (6th Cir. 2014)) ("addressing an issue on appeal 'requires developed argument'" to avoid waiver); *Bickel v. Korean Air Lines Co*, 96 F.3d 151, 153 (6th Cir. 1996) (citing Fed. R. App. P. 28(a)) (an issue must be raised in statement of issues and argued in the brief to be considered on appeal).

### B. Hall's Waiver Renders Their Discovery Arguments Moot.

On review of a discovery issue, "[t]he test for mootness is whether the relief sought would, if granted, make a difference to the legal interests of the parties." *Green*, 196 F.3d at 632 (quoting *McPherson v. Michigan High Sch. Athletic Ass'n*, 119 F.3d 453, 458 (6th Cir. 1997)) (cleaned up).

Here, the Hall seeks reversal of the District Court's order denying discovery as to billing records which would allow them to conduct their own lodestar cross-check. As discussed in greater detail below, Hall is not entitled to such discovery. But even if they were, their appeal as to lodestar-related discovery is rendered moot by their failure to assert that the District Court erred by applying the percentage-of-the-fund method over the lodestar, combined with the fact that a lodestar cross-check

20

is not even required in these circumstances.[8]  Given this waiver, the lodestar as to

this fee award is no longer a live issue, and therefore any favorable discovery ruling

on appeal would not affect their interests, regardless of this Court's decision on other

issues in this appeal.  *See, e.g.*, *Green*, 196 F.3d at 632 (discovery found moot as to

resolved legal issue).

Hall has waived the issue, therefore discovery on the issue is moot.  The Court

should reject this aspect of their appeal accordingly.[9]

## IV.  The District Court Properly Denied Objectors' Request for Discovery of Even More Detailed Billing and Cost Records Than Those Already Provided.

### A. The District Court Correctly Applied Rule 23(h) in Denying Hall's Requested Discovery.

Hall attempts to cast the District Court's denial of additional discovery as a

violation of their right to object under Rule 23(h)(2); therefore, the District Court's

denial is an error of law.  The actual text of the Rule, however, contains no language

---

[8] The Court need only apply one method and any cross-check using the non-chosen method is optional.  *See Linneman v. Vita-Mix Corp.*, 970 F.3d 621, 628 (6th Cir. 2020) (citing *Gascho*, 822 F.3d at 281–82) ("[O]ur court has repeatedly said that district courts are not required to conduct a crosscheck in every case."); *Van Horn*, 436 F. App'x at 501.  Thus, once the District Court decided to apply the percentage-of-the-fund method, the lodestar analysis was solely for the District Court's own benefit and assurance.

[9] This Court may still dismiss this part of the appeal should it find that this issue is more appropriately understood as a standing issue.  *See, e.g.*, *R. K. by & through J. K. v. Lee*, 53 F.4th 995, 2022 WL 17076105 at *4 (6th Cir. 2022).

evincing a substantive right to discovery, let alone a right to discovery of the most possibly detailed billing records.  Instead, the Rule permits the trial court to award "reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement," and goes on to outline *procedures* to be followed.  Fed. R. Civ. P. 23(h).

Those procedures are as follows: First, "[a] claim for an award must be made by motion under Rule 54(d)(2), subject to the provisions of this subdivision (h), at a time the court sets."  Fed. R. Civ. P. 23(h)(1).  "Notice of the motion must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner."  *Id.*  "A class member, or a party from whom payment is sought, may object to the motion."  Fed. R. Civ. P. 23(h)(2).  The Court may hold a hearing on the matter and, in ruling on the request, must find facts and state its legal conclusions.  Fed. R. Civ. P. 23(h)(3).  Finally, "[t]he court may refer issues related to the amount of the award to a special master or a magistrate judge, as provided in Rule 54(d)(2)(D)."  Fed. R. Civ. P. 23(h)(4).

That's it.  Hall points to Rule 23(h)(2) as the provision that confers upon them a right to discovery, but the Rule only states that objectors or a party from whom payment is sought "may object to the motion."  A plain text reading of this subsection indicates only a right to present an objection to the motion for fees, not a right to present an objection *with the benefit of extensive discovery*.  And Hall was

22

properly given that opportunity; indeed, Hall filed a written response to the motion for attorneys' fees and expenses and were allowed to present objections in a hearing before the District Court.

In support of their position, Hall points to several out-of-circuit cases that, according to Hall, hold that Rule 23(h) specifically affords them an expansive, substantive right to discovery of attorney billing records. *See In re Mercury Interactive Corp. Secs. Litig.*, 618 F.3d 988, 993–95 (9th Cir. 2010); *Redman v. RadioShack Corp.*, 768 F.3d 622, 638 (7th Cir. 2014); *Keil v. Lopez*, 862 F.3d 685, 705 (8th Cir. 2017); *Johnson v. NPAS Sols., LLC*, 975 F.3d 1244, 1252-55 (11th Cir. 2020).

But Hall overstates the breadth of these opinions' holdings, which deal not with discovery but with *timing*. Specifically, these cases hold only that Rule 23(h) was violated where the court-ordered timeline prevented the objectors from effectively reviewing the class counsel's fees motion before they had to file their objection. *See Mercury Interactive*, 618 F.3d at 993 ("We exercise our discretion to reach the question of whether Federal Rule of Civil Procedure 23(h) requires district courts *to set the deadline for objections to attorneys' fees on a date after the fee motion has been filed*, because it is a pure question of law.") (emphasis added); *Redman*, 768 F.3d at 637–38 (citing *Mercury Interactive*, 618 F.3d at 993–95) ("Class counsel did not file the attorneys' fee motion until after the deadline set by

the court for objections to the settlement had expired. That violated the rule…
[objectors] were handicapped in objecting because the details of class counsel's
hours and expenses were submitted later, with the fee motion, and so they did not
have all the information they needed to justify their objections"); *Keil*, 862 F.3d at
705 (quoting *Mercury Interactive*, 618 F.3d at 994–95) ("Because the deadline for
submitting objections had passed by the time class counsel submitted their fee
motion, class members were denied an 'adequate opportunity to review and prepare
objections to class counsel's completed fee motion.' […] We hold only that the
district court erred by setting the deadline for objections on a date before the deadline
for class counsel to file their fee motion."); *Johnson*, 975 F.3d at 1253 ("[W]e have
no difficulty concluding that by requiring class members to object to an award of
attorneys' fees *before class counsel had filed their fee petition*, the district court
violated Rule 23(h).") (emphasis added).[10]

In other words, these cases establish not a right to discovery in response to a
fees motion, but the right to "object to the motion." Fed. R. Civ. P. 23(h)(2);
*Mercury Interactive*, 618 F.3d at 994 (class must have adequate opportunity to
"review and prepare objections"). True, these opinions discuss objectors'

---

[10] The District Court's schedule for filing of the fees motion and responses
was proper. Thus, rejecting Hall's argument on this point will not create a circuit
split, as they allege. *See* Hall Br. at 23.

opportunity to review class counsel's hours and expenses, but only as a potential benefit that flows from a proper schedule that permits a true "response" from objectors to a fees motion. But none of these cases hold, as Hall asserts, that Rule 23(h) itself is the source of a fee objector's right to discovery.

In addition to the actual text of the Rule, the Committee Notes to Rule 23 further confirm this, citing Rule 26 as the basis for any discovery request. *See* Advisory Committee Notes on the 2003 Amendments to Rule 23 ("The court may allow an objector discovery relevant to the objections. In determining whether to allow discovery, the court should weigh the need for the information against the cost and delay that would attend discovery. *See Rule 26(b)(2).*") (emphasis added); *see also Cassese v. Williams*, 503 F. App'x 55, 58 (2d Cir. 2012) (citing *Wal–Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 120 (2d Cir. 2005)) ("[W]hether to grant objectors access to billing records is a matter within the district court's discretion.").

This is not to say that the lack of a right to discovery within Rule 23(h) means objectors are entirely precluded from obtaining discovery as to information supporting such a request for attorney's fees. To the extent they are afforded such a right, Rule 23(h) simply is not the *source* of it, and therefore the District Court could not have misinterpreted it in denying Hall's discovery request. This Court should reject Hall's attempt to characterize the District Court's denial of further discovery

as misapplication of Rule 23(h), and decline to read into Rule 23(h) a substantive right to or special category of discovery. Instead, the District Court's decision is more properly understood (like most discovery rulings) as within the District Court's ordinary discretion to deny.[11]

### B. Hall Has Not Otherwise Demonstrated Their Right to the Additional Discovery Sought.

#### 1. Hall Lacks a Cognizable Due Process Right to Discovery in This Context.

Hall further asserts that denial of their request for comprehensive billing and cost records violates their due process rights, analogizing their situation to that of a corporate defendant litigating a fee award. Hall Br. at 21, 22 n.3 (citing *Yamada v. Nobel Biocare Holding AG*, 825 F.3d 536, 545 (9th Cir. 2016), and *Chambers v. Whirlpool Corp.*, 980 F.3d 645, 672 (9th Cir. 2020)). These cases are distinguishable and illustrate that Hall is simply not similarly situated to those defendants, nor are their due process rights similarly implicated.

In *Yamada*, a class settlement was reached which, unlike here, provided class-members (in part) non-monetary relief, including replacement of defective products and a lifetime warranty. *See* 825 F.3d at 542. Class counsel moved for fees based

---

[11] Even if this Court finds that Rule 23(h) is the source of a substantive right to objector discovery, Hall's request in the District Court was properly denied because (as discussed further below), Counsel provided sufficient billing and expense information attached to its motion. *See* Exs. to Fee Mot., RE 1458-1–1458-31.

on a lodestar method, which the trial court applied and granted in part after reviewing *in camera* re-submitted billing records which it initially rejected as insufficiently detailed. *Id.* at 542–43. Significantly, *defendant* opposed class counsel's fees motion and requested disclosure of the records reviewed *in camera*, which the trial court denied. *Id.* The Ninth Circuit vacated the award, explaining that "the district court's use over Defendants' objection of ex parte, in camera submissions to support its fee order violated Defendants' due process rights." *Id.* at 544. Unlike here, however, the trial court in *Yamada* applied a lodestar method (using percentage-of-the-fund only as a cross-check), which makes sense given that a lodestar is "is appropriate in class actions where the relief sought and obtained is not easily monetized." *Id.* at 546 (citing *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011)). Here, the District Court did not use a lodestar method (nor was it required to, as discussed in greater detail below), nor has Hall cited any authority that establishes their right to conduct their own lodestar cross-check and present it to the District Court.

Most importantly, the *Yamada* court explained that "the Due Process Clause requires that *opposing* counsel have access to the timesheets relied on to support the fee order." *Id.* at 545 (emphasis added). But Hall does not cite to—nor is Class Counsel aware of—any authority that establishes that objectors to a class action have the same, enforceable due process interest. Indeed, the Ninth Circuit recently

27

rejected such an argument to extend *Yamada* by an objector who asserted that she was entitled to "full access to class counsel's billing records," with the court noting that *Yamada* held only that "*defendants*—who would be paying class counsel's fees—were entitled to 'access to the timesheets'" for purposes of inspection and objection.  *Chambers*, 980 F.3d at 672 (quoting *Yamada*, 825 F.3d at 544–46) (emphasis in original).  Which makes sense: defendants litigating fees are paying that award out of their own pockets.  Hall argues that the fees award here "reduce[s] class recovery dollar-for-dollar, so Flint claimants have identical due process stakes as the defendant in Chambers."  Hall Br. at 22 n.3; *see id.* at 21 ("No one questions that attorneys regularly provide billing statements to clients.").  But objectors do not "pay" attorney's fees out of pocket in the common fund context, which reflects a contingent fee agreement common among plaintiffs (unlike defendants) in civil litigation; instead, it merely reduces their recovery in damages, which would not have been obtained absent class counsel's efforts.  Fee Order, RE 2105, PageID # 72123 ("Awarding fees to counsel necessarily reduces the amount available for Claimants' Monetary Awards. However, this is a common occurrence in every contingency fee case. This is the way the litigation system operates and it is standard.").

Hall simply lacks, as they assert, a due process or other inherent right to expanded discovery like that of a defendant.  *See Charron v. Wiener*, 731 F.3d 241,

248 (2d Cir. 2013) ("Objectors to a settlement have no automatic right to discovery or an evidentiary hearing in order to substantiate their objections."). For this reason, the District Court did not abuse its discretion in denying the exhaustive billing and costs discovery requested.[12]

### 2. A Fee Award Cross-Check is Merely Optional in the Sixth Circuit and Hall Fails to Show That a Cross-Check is Specially Required Here.

The District Court denied Hall discovery as to detailed fee and cost information, finding such lodestar-related discovery unnecessary where it had applied a percentage-of-the-fund approach and considered counsel's lodestar merely as an optional cross-check. Hall challenges whether the cross-check was truly optional, asserting that "no Sixth Circuit precedent clearly establishes that a lodestar crosscheck may be omitted entirely as optional" and that, "at the very least, this Circuit prefers its use." Hall Br. at 25. They further cite *Moulton* as evidence that this Court "prefers" use of a lodestar cross-check, Hall Br. at 25, and, at the very least, is "especially desirable in the context of a nine-digit 'megafund' settlement that involves 'economies of scale,'" *id.* (citing *Bowling*, 102 F.3d at 780).

---

[12] Even if this Court finds that Rule 23(h) is the source of a substantive right to objector discovery, Hall's request in the District Court was properly denied because (as discussed in further detail below), Counsel provided sufficient billing and expense information attached to its motion. *See* Exs. to Fee Mot., RE 1458-1–1458-31.

Hall is wrong.  While a trial court evaluating a fee request from class counsel may elect to cross-check its chosen method, *see Gascho*, 822 F.3d at 297 (citing *Van Horn*, 436 F. App'x. at 500) ("[C]ross-checks against the other method are not uncommon."), the Sixth Circuit "has *repeatedly* said that district courts are not required to conduct a crosscheck in every case," *Linneman*, 970 F.3d at 628 (emphasis added) (citing *Gascho*, 822 F.3d at 281–82); *Van Horn*, 436 F. App'x at 501.  Indeed, the Sixth Circuit has gone so far as to affirm fee awards where the trial court's analysis on one method is incorrect, but the alternative analysis independently justified the fee award.  *See, e.g.*, *Gascho*, 822 F.3d at 281 (citing *Van Horn*, 436 F. App'x at 501) ("We need not reach the issue, however, because the district court also employed the percentage of the fund cross-check and, as discussed below, that method independently validated the decision to award the attorney's fees in the case."); *Bowling*, 102 F.3d at 779–81 (affirming  percentage-of-the-fund fee award   without reviewing the lodestar cross-check); *Van Horn*, 436 F. App'x at 501 (mistake in the trial court's percentage-of-the-fund analysis did not justify reversal because trial court's lodestar analysis independently justified fee award).[13]

---

[13] Thus, in the event that this Court affirms the District Court's percentage-of-the-fund analysis, it need not even reach the issue of lodestar-related discovery, as any error as to the lodestar would be harmless error.

Hall not only fails to explain why this clearly established caselaw should not apply, they fail to even acknowledge it.  Further, the cases cited as evidence that the Sixth Circuit prefers use of a cross-check and a cross-check is preferable in large class actions simply do not support those assertions.  Nowhere did the court in *Moulton* express a preference for use of a lodestar cross-check; rather, the court vacated the trial court's fee award, based on the percentage-of-the-fund method, because "the district court did not adequately explain its reason for approving the amount," failing to indicate why it adopted the percentage-of-the-fund method and evaluate the factors considered in arriving at the fee.  581 F.3d at 352.[14]  There is no such error here, where the District Court gave a clear statement explaining its rationale for applying the percentage-of-the-fund method and conducted a thorough analysis of all the relevant factors.  It did not merely state that "attorney fee percentage [is] fair and reasonable considering the several years of litigation."  *Id.*  Nor did the court in *Bowling* indicate that the lodestar was preferable in large class actions; in fact, the court affirmed the trial court's percentage-of-the-fund award without even reviewing its lodestar cross-check.  102 F.3d at 780.

The broader point fails as well.  An optional cross-check is not unusual as Hall implies; indeed, a cross-check is optional in nearly every Circuit.  *See* Newberg &

---

[14] The words "lodestar" and "cross-check" do not even appear in the court's opinion.

31

Rubenstein, *supra*, § 15:88.  Contrary to Hall's position, use of a percentage-of-the-fund approach in massive cases like this is preferable, as it "more accurately reflects the economics of litigation practice." *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1269 (D.C. Cir. 1993).[15]  This method also "enhances efficiency" of class counsel, whereas under the lodestar, "attorneys not only have a monetary incentive to spend as many hours as possible (and bill for them) but also face a strong disincentive to early settlement." *In re Thirteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 307 (1st Cir. 1995) (citing *Report of the Third Circuit Task Force Report, Court Awarded Attorney Fees*, 108 F.R.D. 237, 247–48 (1986)). It also enhances the efficiency of the litigation itself.  *See Rawlings*, 9 F.3d at 516 (citing *Shalala*, 1 F.3d at 1269–70) ("[T]he lodestar method has been criticized for being too time-consuming of scarce judicial resources."); *see also Hensley*, 461 U.S. at 437 ("A request for attorney's fees should not result in a second major litigation."). Of course, circumstances differ from case-to-case, but that fact only further justifies allowing the trial court discretion to choose which method to apply as opposed to a rigid rule permitting any objector to conduct their own independent cross-check in every case.

---

[15] This is particularly so where a case was settled after many years of complex litigation, as opposed to the windfall class counsel may receive by settling a case early on. *See, e.g.*, *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990).

Finally, Hall also asserts that even if the cross-check were optional, "that does not negate the right of objectors to offer lodestar-based arguments when contesting Rule 23(h) fee requests," citing the out-of-circuit *Mercury Interactive*, *Redman*, *Keil*, and *Johnson* cases discussed above.  Hall Br. at 25.  As discussed above as to Rule 23(h), Hall simply fails to identify the source of any such right beyond the cases cited, which merely establish their right to object with sufficient time to prepare a response, not to object with exhaustive discovery.[16]

Because the cross-check was merely optional, the District Court did not err in denying Hall's request for lodestar-related discovery upon properly deciding to apply a percentage-of-the-fund method, as such discovery therefore lacked relevance.

### 3.  Hall had Sufficient Information to Evaluate their Position.

Regardless, Class Plaintiffs provided sufficient billing information attached to their motion for Hall's review that enabled an effective and meaningful response to the motion for fees, thus rendering additional discovery unnecessary and properly denied.

---

[16] Nor does Hall argue that the lodestar was required for any further reason, such as in the fee-shifting context.  *See San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d at 305 (explaining that while "lodestar method is entrenched in the statutory fee-shifting context," percentage-of-the-fund approach is a viable alternative in the common fund context).

Specifically, every law firm included in the fee request provided information indicating specific firm personnel who worked on the case, their title and rates at which they billed over the course of several years, and the number of hours billed per person. *See* Exs. to Fee Mot., RE 1458-1–1458-31. This information also included the total number of hours, in one-tenth (0.1) hour increments, billed by each firm as to eighteen discrete categories of tasks.[17] *See, e.g.*, Ex. to Fee Mot., CMST Lodestar by Task, RE 1458-2, PageID # 57223.

This amount of detail was sufficient. As the Sixth Circuit has explained, "counsel need not 'record in great detail' each minute he or she spent on an item*," Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 553 (quoting *Wooldridge v. Marlene Indus. Corp.*, 898 F.2d 1169, 1177 (6th Cir. 1990)), but rather should identify the "general subject matter," *id.* (quoting *Cleveland Area Bd. of Realtors v. City of Euclid*, 965 F. Supp. 1017, 1020 (N.D. Ohio 1997)); *see also Hensley*, 461 U.S. at 437 n.12.[18] The standard of detail required is less exacting where, as here,

---

[17] These categories include: including Administration (data and file management); Document Review; Legal Research; Pleadings, Briefs, and Pretrial Motions; Other Discovery; Deposition Prep/Take/Defend; Experts/Consultants; Case Vetting/Bellwether; Class Certification; Trial Preparation and Trial; Court Appearances/Arguments Before the Court; Litigation Strategy and Case Management; Settlement; Travel; Committee Meetings or Calls; Lead Counsel/PEC/Liaison Counsel Duties; Time and Expense Admin; and Appeal. *See, e.g.*, Ex. to Fee Motion, CMST Lodestar by Task, RE 1458-2, PageID # 57223.

the lodestar is used merely as a cross-check.  *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000) (citing *In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 148 F.3d 283, 342 (3d Cir. 1998)) ("[W]here used as a mere cross-check, the hours documented by counsel need not be exhaustively scrutinized by the district court.").  "Instead, the reasonableness of the claimed lodestar *can be tested by the court's familiarity with the case*," *id.* (emphasis added), which is precisely what happened here: the District Court implemented a thorough structure that required detailed, monthly submissions by counsel for continual review by the Special Master over many years of this litigation, culminating in a lengthy report. *See* Report of the Special Master on Time and Expense Submissions, RE 2104. Utilizing its internal structures, the District Court went above and beyond to ensure a thorough lodestar as a cross-check.  Rather than being erroneous, this model is exemplary for a lodestar cross-check in massive, sprawling litigation such as this, which allowed the District Court to conduct a thorough cross-check while avoiding the fees issue from devolving into a "second major litigation" that the Supreme Court has cautioned against.  *Prudential Ins. Co.*, 148 F.3d at 342 ("We recognize the lodestar calculation in this case was solely intended as a cross-check of the court's

---

[18] Indeed, Counsel for Hall agreed with the District Court that the extent of records submitted by Class Counsel differed greatly from those provided in *Mercury Interactive*, the case central to Hall's Rule 23(h) theory.  Fairness Hearing Transcript, RE 1906, Page ID ## 67010–11.

primary fee calculation using the percentage-of-recovery methodology, *which counsels a cautious approach to additional fee discovery*.") (emphasis added).

### 4. The District Court's Decision is Fully Consistent with Sixth Circuit Precedent.

Hall also points to this Court's decision in *Shane Grp., Inc. v. Blue Cross Blue Shield of Michigan*, 825 F.3d 299 (6th Cir. 2016), as support both for their argument that their procedural rights under Rule 23 were violated, as well as for their argument that the records proffered by Class Counsel were insufficient. Hall Br. at 27–28. In *Shane*, the Sixth Circuit vacated a class settlement due to the sealing from public view of countless pleadings including expert reports necessary for class members to understand proceedings impacting their legal rights. *Shane*, 825 F.3d at 306. This left both the public and the class "able to access only fragmentary information about the conduct giving rise to this litigation, and next to nothing about the bases of the settlement itself." *Id.* In doing so, the court also pointed out the trial court's lack of reasoning in accepting proffered billing rates and that "[t]he documentation of fees in this case should have only heightened the district court's concerns about whether the settlement is fair to unnamed members of the class." *Id.* at 310. *Shane* is inapplicable for multiple reasons.

First, in *Shane*, the court vacated an entire settlement, not merely a fee award, due to sealing practices so overbroad that virtually every document relevant to understanding and evaluating the settlement. This result makes sense; there is

36

simply no substitute to providing class members access to sufficient information to assess *the merits* of a settlement that will affect their legal rights. In contrast, neither the court nor potential class members require access to detailed billing records to assess the fairness of a fee request premised on the percentage-of-the-fund approach which does not require a lodestar crosscheck to be deemed reasonable. *See supra* Section IV.B.2.

Second, because the court was vacating the entire settlement, it had no reason to conduct an in-depth analysis of attorneys' fees or issue an express holding. Instead, the court merely expressed concern as to the trial court's *lack of reasoning* regarding aspects of the lodestar cross-check. *Id.* at 310 ("[I]f a district court thinks they are relevant to the fees that unnamed class members should actually pay, the court must explain why."). Unlike in *Shane*, however, here the District Court thoroughly explained its lodestar cross-check, whereas the trial court in *Shane* offered just a few sentences with conclusory findings. *Compare* Fee Order, RE 2105 PageID ## 72106–17, *with* S*hane Grp., Inc. v. Blue Cross Blue Shield of Michigan*, No. 10-CV-14360, 2015 WL 1498888, at *16 (E.D. Mich. Mar. 31, 2015), *vacated and remanded*, 825 F.3d 299 (6th Cir. 2016).

The *Shane* court further questioned class counsel's documentation supporting its fee request, which included *only* employee information with corresponding hours and rates. 825 F.3d at 310. Here, Class Counsel has gone further, indicating hours

spent by task for each firm according to eighteen distinct categories of case activity, as ordered by the Court. The *Shane* court also made this observation within the context of evaluating the settlement as a whole—the opinion did not take into consideration important the standard for reviewing, or documentation necessary to support, a fee request based on a percentage-of-the-fund approach where any lodestar crosscheck is optional. 825 F.3d at 310 ("The documentation of fees in this case should have only heightened the district court's concerns about whether the settlement is fair to unnamed members of the class."). Another key difference: here, the District Court had the benefit of the Special Master collecting and scrutinizing billing records *for years*. There is no indication that the trial court in *Shane* had conducted such extensive review.

Third, Hall's assertion that *Shane* requires public access to exhaustive billing records is unavailing. *Shane* contains no such holding, and records supporting the District Court's optional cross-check and the Special Master's report are already publicly available. Courts have recognized that disclosure of exhaustive billing records as to a merely optional cross-check is unnecessary. *See, e.g.*, *In re Nat'l Football League Players' Concussion Inj. Litig.*, 814 F. App'x 678, 683 n.8 (3d Cir. 2020) (citing *In re Diet Drugs*, 582 F.3d 524, 539 (3d Cir. 2009)) ("[S]ince the lodestar served only as a cross-check, it was within the Court's discretion to decline to make public the billing records."); *see also Diet Drugs*, 582 F.3d at 539 (citing *In*

38

*re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 306–07 (3d Cir. 2005)) ("[Appellant] suggests that the Court should have considered and made public Class Counsel's individual billing records, but we have held that courts need not always engage in that time-consuming process. . . . In large cases, especially one of prodigious proportions like this, reliance on summaries is certainly within the discretion of the district court.").[19]

Finally, unlike in *Shane*, the Settlement from which fees were awarded was a partial settlement—disclosure of detailed billing records and other costs would have provided a roadmap to the non-settling Defendants of Plaintiffs' plan for prosecuting the case against them. Given the voluminous information made available to the public regarding Counsel's fee and expense request, there is simply no reason to risk prejudicing Plaintiffs' continuing litigation.

*Shane* is easily distinguishable from the circumstances here, a fact admitted by counsel for Hall at the fairness hearing. Fairness Hearing Transcript, RE 1906, PageID # 67012.

---

[19] It is also unclear why, at this stage of the litigation, with the District Court's discretionary decision to use the percentage-of-the-fund method having gone unchallenged, Hall believes that mere disclosure of such records on the public docket also entitles them to re-litigation of the issue.

39

**5.  Hall's Motion for Discovery Failed to Show a Need for Cost-Related Information as to Class Counsel.**

To the extent Hall appeals the District Court's denial of discovery as relates to submitted by all firms included in the fee request, it should be rejected.  "Under the common fund doctrine, class counsel is entitled to reimbursement of all reasonable out-of-pocket litigation expenses and costs in the prosecution of claims and in obtaining settlement, including expenses incurred in connection with document productions, consulting with experts and consultants, travel and other litigation-related expenses."  *Cardizem*, 218 F.R.D. at 535.  "Expense awards are customary when litigants have created a common settlement fund for the benefit of a class."  *In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*, 248 F.R.D. 483, 504 (E.D. Mich. 2008) (quoting *In re F & M Distribs., Inc. Sec. Litig.*, No. 95-CV-71778-DT, 1999 U.S. Dist. LEXIS 11090, at *20 (E.D. Mich. June 29, 1999)).

As relates to Class Counsel, Hall's motion to the District Court only included a reference to potential excessive lodging costs, citing Cohen Milstein's participation in another case where another firm (not Cohen Milstein) stayed at an expensive hotel.  Hall Mot. for Disc., RE 1586, PageID ## 61000–01.  Such justification is simply too insufficient and speculative to warrant additional discovery as to Counsel's costs.  The motion on this ground was rightly denied.

Regardless, sufficient information regarding costs was provided. Shared expenses categories included specific dollar amounts for Administrative Matters; Experts & Consultants; Special Master & Mediators; Discovery; Depositions; Filing Costs; Accounting and Vendor Fees; and Guardian Ad Litem. *See* Ex. to Fee Mot., RE 1458-2, PageID # 57213. Class Counsel further provided specific information regarding each firm's own costs as to various categories, such as Postage & Shipping; Printing & Photocopying; Lexis & Westlaw; Telephone; Airfare; Transportation; Hotel; Reasonable Meals; and Other Reasonable & Necessary Charges. *E.g.*, *id.* at 57224. This was enough. *See, e.g.*, *McCombs v. Meijer, Inc.*, 395 F.3d 346, 361 (6th Cir. 2005) ("[A]s indicated by the district court, the costs were itemized in a supplemental affidavit supplied by counsel. Thus, the district court did not abuse its discretion in awarding costs to McCombs."). And, like with fees, Hall has not identified a cognizable source of their right to such discovery.

For these reasons, the motion for discovery as to exhaustive cost information was properly denied.

## V.    Hall's Challenge to the Tiered Common Benefit Award is Entirely Meritless.

Hall challenges certain aspects of the CBA which they term "special assessments." Hall Br. at 35–36. Hall does not challenge the global 6.33% CBA, but rather takes issue with the tiered approach that awarded additional common benefit fees for those categories of claimants who, lacking their own counsel,

received additional common benefit including: the 25% CBA from the claims of unrepresented Minors and the 17% CBA from the claims of late-retained Minors and members of the Adult, Property, and Business Economic Loss Subclasses. Hall's arguments with respect to these components of the CBA mischaracterize the record and misstate the law. Regardless, even if the Court were to embrace Hall's preferred characterization of the law, they stand to gain nothing. Accordingly, the Court should dismiss their Appeal for lack of standing.

### A. Hall Lacks Standing to Appeal the Common Benefit Award.

Constitutional standing to sue requires that a party satisfy the following three conditions: (1) it must allege some concrete injury in fact; (2) that injury must be fairly traceable to the defendant's actions; and (3) it must be likely, and not merely speculative, that a favorable decision will provide redress. *Lujan v. Defs. of Wildlife,* 504 U.S. 555, 560–61, 112 (1992); *see also Utah v. Evans,* 536 U.S. 452, 122 (2002). These requirements must be met by a party appealing a judgment. *Arizonans for Off. Eng. v. Arizona,* 520 U.S. 43, 64 (1997).

It has long been the case that "nonnamed class members like petitioner who have objected in a timely manner to *approval of the settlement* at the fairness" have standing to appeal the settlement's approval. *Devlin v. Scardelletti*, 536 U.S. 1, 14 (2002) (emphasis added). Critically for purposes of this appeal, however, Hall *does not* appeal the final approval of the settlement—Hall objected to the Settlement

before the District Court but did not file a notice of appeal following the District Court's grant of final approval. Accordingly, this Court lacks jurisdiction to review the settlement including the allocation of funds between the Minors, Adult Exposure, Property, Business Economic Loss, and Programmatic Relief categories. *See Bowles v. Russell*, 551 U.S. 205, 214 (2007).

Having declined to appeal the fairness of the settlement or global 6.33% CBA, Hall argues that other components of the CBA—which they term a "special assessment"—are somehow inconsistent with the legal underpinnings of the common fund doctrine. The bulk of their arguments appear to target the CBA as it pertains to unrepresented and late-retained Minors. But *no part* of the Minors' settlement allocation includes a class component. Accordingly, any change to the CBA associated with unrepresented minors has *no effect* on the funds available to class members (such as Hall) who are only eligible to make claims in the Adult Exposure, Property, and Business Economic Loss categories under the terms of the Settlement.

Nor could Hall possibly benefit from changes to the 17% CBA assessed on the claims of late-retained members of the Adult, Property, and Business Economic Loss Subclasses.[20] As discussed previously, Hall waived any appeal of Class

---

[20] "Unrepresented" members of the class are typically referred to as absent class members. The Settlement Agreement identified certain adults, property-

Counsel's fees so that component of the Fee Order will remain unchanged regardless of the outcome of this appeal. *See supra* Section III.A. Importantly, the CBA structure for late-retained claimants provides fees for counsel *in lieu of*, not in addition to, the unopposed 25% fee awarded to class counsel from these claims. Were Hall to succeed in persuading the Court to alter or eliminate the 17% CBA assessed on late-retained members of these Subclasses, they would be no better off: absent the tiered CBA structure, Hall would pay class counsel 25% fees—exactly the same as what they pay under the current structure (17% CBA + 8% for retained counsel).

Because Hall would be no better off even if victorious in their arguments, they lack standing to appeal these components of the CBA. *See, Huyer v. Van de Voorde*, 847 F.3d 983, 987 (8th Cir. 2017) ("class members lack standing to appeal aspects of a class action settlement that do not adversely affect their own interests."); *Hill v. State St. Corp.*, 794 F.3d 227, 231 (1st Cir. 2015) (objectors lacked standing to challenge attorneys' fees because "no decrease in the portion of the $60 million settlement amount that is paid to counsel will in any way benefit objectors"); *Knisley*, 312 F.3d at 1126 (holding that an objector lacks standing if modifying a fee

---

owners, and businesses retained by a particular date and expressly excluded those persons and entities from the Settlement Class. Am. Settlement Agreement, RE 1394-2. For these previously retained non-class members, the Fee Order awarded their counsel fees equal to 25% of the value of their claims. Fee Order, RE 2105, PageID # 72143.

award does not "actually benefit" the objector); *see also In re Packaged Ice Antitrust Litig.*, No. 17-2137, 2018 WL 4520931, at *5 (6th Cir. May 24, 2018) ("An objector who does not have an injury-in-fact lacks standing to appeal an aspect of a class-action settlement that does not adversely affect his own interests."). As such, this component of their appeal should be dismissed. *See Kardules v. City of Columbus*, 95 F.3d 1335, 1346 (6th Cir. 1996).

### B. The District Court Applied the Correct Legal Rule to Assess a Reasonable Common Benefit Assessment.

Even if Hall had standing to appeal these components of the CBA, their arguments related thereto are entirely meritless.

As an initial matter, it is worth reiterating the purpose behind the tiered CBA approach which Class and Liaison counsel agreed to after negotiating the overall fund and its allocation among the various subclasses and categories of claimants.[21] This CBA structure served to effectuate parity among similarly situated claimants— an important goal for the State in agreeing to settle the claims of all parties.

The District Court agreed that parity was an important goal for the settlement which the proposed tiered CBAs effectuated. Fee Order, RE 2105, PageID # 72049 (explaining that, "[t]his aspect of the proposal is simple, uniform, and well-designed

---

[21] Pls.' Fee Mot., RE 1458, PageID # 57160 ("In this way, consistent with the law and equitable principles, the Proposal has all claims contribute an equal pro rata share to Plaintiffs' Counsel's fees, while also contributing to common benefit compensation in proportion to Claimants' reliance on common benefit work.")

to compensate Plaintiffs' Counsel for their work while also retaining parity, or equality, among Claimants who qualify for the same settlement Compensation Grid category.") Exercising its well-established equitable authority[22] to award reasonable costs and attorneys' fees from a common fund, and applying the *Ramey* factors, the District Court concluded that a proposed tiered CBA approach was reasonable with slightly lower percentages than originally proposed. *Id*. at PageID # 72089.

Hall does not even cite *Ramey*—controlling precedent on this issue—let alone argue that the Court applied it incorrectly. Instead, Hall's CBA arguments rely on mischaracterizations of the record, irrelevant commentary, and, almost exclusively, decades' old precedent from other Circuits through which they attempt to impose a categorical requirement that common benefit awards be "proportional." Hall Br. at

---

[22] *See, e.g.*, *Boeing*, 444 U.S. at 478 ("this Court has recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a *reasonable* attorney's fee from the fund as a whole"). Hall's cited authority is inapposite and in no way undermines the District Court's equitable authority here. *See Grupo Mexicano Desarollo S.A. v. All. Bond Fund, Inc.*, 527 U.S. 308, 322 (1999) (holding district lacked authority to impose a *pre-judgment* lien); *In re Roundup Prods. Liab. Litig.*, 544 F. Supp. 3d 950, 959 (N.D. Cal. 2021), dismissed, No. 21-16228, 2022 WL 16646693 (9th Cir. Nov. 3, 2022) (rejecting request to "create[e] a fund at the beginning of litigation and requiring contributions to that fund from individual recoveries in anticipation of the MDL lawyers needing to be reimbursed."); *In re Nat'l Prescription Opiate Litig.*, 956 F.3d 838, 843 (6th Cir. 2020) (addressing timely amendment – no mention of a district court's equitable powers or Rule 23(h)); *Holbrook v. Pitt*, 748 F.2d 1168, 1176 (7th Cir. 1984) (addressing inapplicability of the common fund doctrine to the Equal Access to Justice Act).

35–46.[23]  Hall never defines what would satisfy their self-imposed "proportionality" requirement, but, reading between the lines, Hall appears to suggest that, as a matter of law, "proportionality" demands that unrepresented and late-represented claimants pay less in total attorneys' fees than retained claimants, but the exact same amount of any amount designated as a "common benefit."  None of their cases stand for this principal.  At most, their cited authority supports the uncontroversial proposition that common benefit awards require an assessment of the unique circumstances of the case and should reflect the relative "benefit" conferred. *See*, *e.g.*, *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 393–94 (1970).[24]

Hall's principal authority, which is non-binding, *Lindy Bros. Builders, Inc. of Philadelphia v. Am. Radiator & Standard Sanitary Corp.*, 540 F.2d 102 (3d Cir. 1976), provides no support for their position and indeed illustrates why the District

---

[23] For example, Hall notes that the class notice did not reference, "the dramatic effect of bone testing."  Hall Br. at 45.  Setting aside the fact that the scope of class notice not an issue on appeal, bone scans were just one way of many to demonstrate harm and not something that typically appears in a class notice particularly where, as here, the test was mostly relevant to minors who did not settle as a class.  Hall's discussion of and cite to the Tom Green Show is similarly perplexing.  Hall Br. at 44.

[24] *See also Amalgamated Clothing & Textile Workers Union v. Wal-Mart Stores, Inc.*, 54 F.3d 69, 71 (2d Cir. 1995) (citing and quoting *Mills* with no other discussion of proportionality); *Shimman v. Int'l Union of Operating Eng'rs, Loc. 18*, 744 F.2d 1226, 1235 (6th Cir. 1984) (rejecting a request for common benefit fees where the lead claimant received money but other beneficiaries only received injunctive relief).

Court was within its discretion in approving the CBAs at issue here.  In that case, the District Court had erred by imposing a disproportionate portion of the fees awarded on claimants who had not retained counsel before the settlement was approved.  *Id*. at 108 (concluding it was error to require claimants to "pay 81.6 per cent of the attorneys' fee from the settlement fund, even though their aliquot share of the fund was only about . . . 27.8 per cent").  Here, by contract, each claimant will pay *the same* fee percentage regardless of whether they retained individual counsel at some point or wholly relied on Class and Liaison Counsel to prosecute their claims and facilitate the claims administration process.

Unlike in *Lindy*, the District Court based its Fee Order on an extensive record and concluded that varying CBAs were appropriate both because (1) they reflected different counsel's varying contributions and (2) they ensured parity in the total fees paid by each category of claimants and thereby prevented any claimant from free riding on the work performed on behalf of other claimants.  The District Court explained that counsel retained prior to the Settlement's announcement would pay only the global 6.33% CBA to reflect the fact that these counsel, "expended time filing their own lawsuits and that a few responded to motions to dismiss."  Fee Order, RE 2105, PageID # 72103.  Next, with regard to the late-retained counsel, the Court explained that they would be paid 8% of the value of their clients' claims with the remaining 17% going to Class and Liaison counsel, explaining that this was fair as

to late-retained counsel because: "[t]he reduction in the fee amount is appropriate because, once the settlement was announced, counsel did not have to undertake any litigation work or risk." *Id.* at. 72103–04. Finally, as to unretained minors and absent class members, the Court explained that the 25% CBA reflected, "the fact that *there would not be a settlement to participate in, at all*, but for the work of Plaintiffs' Counsel and in particular," Class and Liaison counsel. *Id*. at 72129.

This case is therefore entirely distinguishable from *Lindy*, where the Third Circuit found, "the record devoid of the type of evidence necessary . . . to support an award of attorneys' fees (or their set-off)." *Lindy*, 540 F.2d at 120. Hall fails to account for extensive reasoning that buttressed the District Court's decision, stating without much explanation that the result of the Court's decision is to require, "late-represented and unrepresented claimants to bear a *disproportionate* share of those common benefit fees." Hall Br. at 42. This bald assertion ignores the reality that unrepresented and late-represented claimants *received* greater common benefit—where claimants lacked counsel of their own, Class and Liaison Counsel stepped in to establish the fund and, as the case progressed, answer questions and facilitate registration.

To the extent *Lindy* supports Hall's position at all, the case has been overturned by *Diet Drugs*, 582 F.3d at 550. In *Diet Drugs*, the Third Circuit affirmed

a fee award with varying CBAs for different settlement categories,[25] acknowledging

that the district court's logic "was assailable," *id*. at 549, but holding that:

> The inquiry we must make, however, is not whether a portion of
> the District Court's logic is subject to criticism, but whether the
> fee award itself constitutes an abuse of discretion. Certainly,
> limits on the reasoning behind an award may lead to the
> conclusion that the award itself cannot stand. But when, as in this
> case, the result can otherwise be justified, we are not compelled
> to find an abuse of discretion.

*Id*. at 550.

In reaching this conclusion, the Third Circuit rejected the exact argument raised by

Hall in this appeal, explaining that:

> [N]either *Boeing* nor any other authority requires courts to
> ensure that the "costs of recovery" are shifted with
> exactitude *among* the various subclasses of claimants who
> benefitted from class counsel's efforts. *Boeing* and the other
> cases defining the contours of the common fund doctrine
> mandate only that the fee awarded to class counsel was
> reasonable given the benefit that these attorneys provided to the
> class members.

*Id.*

Hall cites to the dissent in *Diet Drugs* in an attempt to persuade this Court to

adopt a different rule but fail to provide a reasoned basis for this Court to chart the

---

[25] *Diet Drugs* is not alone – other cases have employed this commonsense
approach. *See*, *e.g.*, *In re Syngenta AG MIR 162 Corn Litig.*, No. 14-MD-2591-JWL,
2018 WL 6839380, at *2 (D. Kan. Dec. 31, 2018) (ordering similar structure and
explaining, "[s]pecified percentages of the total fee award are then allocated to those
three pools, reflecting the relative contributions to the settlement class recovery by
the attorneys in those pools.").

new course they advocate.  Hall Br. at 39–40.  As in *Diet Drugs*, Hall does not and cannot establish that the District Court's tiered CBA award constituted an abuse of discretion in light of the Court's fulsome application of the *Ramey* factors to the extensive record in this case.  Accordingly, if the Court chooses to reach the merits of the Hall's CBA arguments, it should affirm the District Court's opinion.

## CONCLUSION

For these reasons Hall's appeal should be dismissed as moot and for lack of standing.  Alternatively, the opinion of the District Court awarding attorneys' fees and expenses should be affirmed.

Dated: December 7, 2022

Respectfully Submitted,

*/s/ Emmy Levens*

Emmy Levens
Theodore J. Leopold
COHEN MILSTEIN SELLERS &
TOLL, PLLC
1100 New York Ave NW, Suite 500
Washington, DC 20005
(202) 408-4600
elevens@cohenmilstein.com
tleopold@cohenmilstein.com

*Counsel for Plaintiffs-Appellees*

## CERTIFICATE OF COMPLIANCE

I certify that this brief conforms to the requirements of Rules 341(a) and (b). The length of this brief, excluding the pages or words contained in the Rule 341(d) cover, the Rule 341(h)(1) table of contents and statement of points and authorities, the Rule 341(c) certificate of compliance, the certificate of service, and those matters to be appended to the brief under Rule 342(a), is 12587 words.

Executed on December 7, 2022.

*/s/ Emmy Levens*

Emmy Levens

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system on December 7, 2022, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

Executed on December 7, 2022.

*/s/ Emmy Levens*

Emmy Levens

## ADDENDUM OF DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

As 6th Cir. R. 30(g) requires, Class Plaintiffs designate the following district court documents as relevant to this appeal:

RE# 507, Case Management Order Regarding Time and Expense Procedures, Page ID ## 15825–52.

RE# 1394-2, Amended Settlement Agreement, Page ID # 54120–211.

RE# 1458, Plaintiffs' Motion for an Award of Attorneys' Fees and Reimbursement of Expenses, Page ID ## 57144–201.

RE# 1458-1–1458-31, Exhibits 1–30 to Plaintiffs' Motion for an Award of Attorneys' Fees and Reimbursement of Expenses, PageID ## 57202–559.

RE# 1458-2, Declaration of Theodore J. Leopold in Support of Plaintiffs' Motion for an Award of Attorneys' Fees and Reimbursement of Expenses, PageID ## 57213–23.

RE# 1548, Objection to Plaintiffs' Motion for an Award of Attorneys' Fees, Page ID ## 60212–46.

RE# 1586, Hall's Motion to Review and Respond to Hourly Billing and Costs; and for Discovery of Fee-sharing Agreements and Invoices/Agreements Pertaining to Claimed Contract Attorneys, Page ID ## 60978–61014.

55

RE# 1796, Supplemental Memorandum in Support of Plaintiffs' Motion for an Award of Attorneys' Fees and Reimbursement of Expenses, Page ID ## 64515–78.

RE# 1906, Transcript of Motion Hearing held on 07/15/2021, Page ID ## 66875–67105.

RE# 2008, Opinion and Order Granting Final Approval of a Partial Settlement, Granting Certification of a Settlement Class, Granting Appointment of Settlement Class Counsel [1794], Denying Objections, and Adopting the Report and Recommendation [2006], Page ID ## 69537–714.

RE# 2104, Report of the Special Master on Time and Expense Submissions of Plaintiffs' Firms Pursuant to Order on Data Collection, Page ID ## 72012–37.

RE# 2105, Report of the Special Master on Time and Expense Submissions of Plaintiffs' Firms Pursuant to Order on Data Collection, Page ID ## 72046–178.

RE# 2130, Notice of Appeal, Page ID ## 72400–01.

RE# 2136, Notice of Appeal, Page ID ## 72409–11.

RE# 2180, Order Establishing Procedures for Management of Claims Process and Expense Payment for Unrepresented Claimants and for Claimants with Multiple Counsel, Page ID ## 72985–89.

RE# 2181, Amended Notice of Appeal, Page ID ## 72990–91.